LEOPOLD Z. SHER AND KAREN B. SHER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7588-86. Filed July 9, 1987.

*Steven Klein*, for the petitioners.
*Diane Helfgott*, for the respondent.

WHITAKER, *Judge*: This matter is before the Court on petitioners' motion for litigation costs pursuant to Rule 231.[1] When this case was called from the calendar on January 20, 1987, the parties appeared and filed a stipulation as to settled issues. At that time, petitioners filed a motion for an award of reasonable litigation costs, and the Court directed that the same be served on respondent and directed respondent to file a response to petitioners' motion by March 23, 1987. Respondent filed a notice of objection to petitioners' motion on March 30, 1987, and petitioners filed a reply to respondent's notice of objection on May 14, 1987. In the reply, petitioners requested that, if the Court deemed it necessary, a hearing be held to resolve factual discrepancies raised by affidavits submitted in support of the motion

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

and responses. Upon a review of the record, we deem it unnecessary to hold such a hearing.[2]

## FINDINGS OF FACT

The following facts are based on the record, including the affidavits and exhibits filed in support of petitioners' motion, respondent's response, and petitioners' reply. About October 23, 1985, petitioners received a letter which was dated October 11, 1985, from the IRS Service Center in Austin, Texas. Accompanying the letter was an IRS examination report which indicated that petitioners failed to report $1,325 in dividend income from A.G. Edwards & Sons, Inc., interest income from French Market Homestead in the amount of $30, and interest income from South Savings & Loan in the amount of $11. The letter contained the following information in the event petitioners disagreed with the findings in the examination report:

If you do not agree with our findings, you may do one of the following within 30 days from the date of this letter.

1. Mail us any additional information you would like us to consider.

2. Request a meeting with an examiner at one of our local district offices. Please write or phone us and we will transfer your case to your district office. They will contact you to arrange a convenient time and place. During this informal discussion, you may submit any additional information you would like considered.

3. Request a conference with a member of our appeals office. The appeals officer will be someone who has not examined your return. Please write or phone us and we will transfer your case to the appeals office nearest you and they will contact you. However, since the examination was conducted entirely by mail, we would appreciate your first discussing our findings with an examiner, as explained in item 2.

\* \* \* \* \* \* \*

Please let us hear from you within 30 days. Otherwise we will have to process your case on the basis of the adjustment shown in the enclosed examination report.

If you have any questions about this matter, please write to the person whose name is shown at the top of this letter, or you may call that person at the telephone number shown. If the number is outside your local calling area, there will be a long-distance charge to you. If you

---

[2]The discrepancies petitioners refer to arose in the affidavits of Mr. Sher, Ms. Cormack, and Mr. Karem. Because the disagreements relate to events which are not relevant to our decision, we find it unnecessary to hold a separate hearing. We have limited our findings of fact to those facts in the affidavits which are not conflicting.

prefer, you may call the IRS telephone number listed in your local directory. An employee there may be able to help you, but the office at the address shown on this letter is most familiar with your case.

If you write to us, please provide your telephone number and the most convenient time for us to call you in case we need more information. Attach this letter to any correspondence to help us identify your case. Keep the copy for your records.

The following day Mr. Sher telephoned H. Lawson, the person identified as the contact person in the letter. H. Lawson was not available, so Mr. Sher spoke with Carol Cormack, the IRS telephone tax assistant. She was available to answer questions from taxpayers about notices they received from the Service Center and about what procedures should be followed in responding to such notices. Under the circumstances described, Ms. Cormack claims she would have instructed Mr. Sher to write a letter to the IRS to explain why the adjustments made were incorrect.

Mr. Sher wrote a letter to the IRS on November 7, 1985. The letter was mailed to H. Lawson at the IRS Service Center in Austin, to the attention of Carol Cormack. In the letter, Mr. Sher enclosed a copy of the IRS Form 1902-E examination changes and specifically addressed each of the adjustments. In addition, he had contacted Robert Karem of A.G. Edwards & Sons, Inc., who sent him a copy of the company's statement reflecting income he earned totaling $775.62.[3] He enclosed a copy of this statement in his letter and explained that he had reported on his return $739.90 of the $775.62 received from A.G. Edwards & Sons, Inc., as interest income, and he conceded that $35.72 had been erroneously omitted. Mr. Sher also stated that the $30 and $11 items were mistakenly omitted and conceded those amounts. He made no reference to the additional $550 which the examination report indicated was received by petitioners from A.G. Edwards & Sons, Inc.

Petitioners next received a letter dated November 24, 1985, from the IRS Examination Branch acknowledging receipt of the November 11, 1985, correspondence. The letter indicated that the IRS would send a reply within 45 days. The IRS contact person was listed as H. Lawson.

---

[3]Mr. Karem also mailed a copy of the statement to H. Lawson and Carol Cormack at the IRS Service Center in Austin.

On December 19, 1985, the IRS Service Center in Austin, Texas, mailed petitioners a statutory notice of deficiency. Respondent made the same determinations that were addressed in the examination letter. Mr. Sher called the telephone contact number listed on the statutory notice, twice, on December 24, 1985, and January 10, 1986, but was unable to speak with anyone who could help him resolve the matter.[4] Mr. Sher was not contacted by a representative of the IRS.

Mr. Sher, an attorney himself, then retained Steven I. Klein, an associate in his law firm. Through counsel, petitioners filed a petition in this Court on March 21, 1986, contesting the amounts respondent determined were received from A.G. Edwards & Sons, Inc.[5]

Respondent's answer was filed by District Counsel on May 22, 1986. Respondent denied petitioners' allegation with respect to the amount of income received from A.G. Edwards & Sons, Inc., and alleged that no record of petitioners' November 7 letter appeared in respondent's administrative files.

The Sher case was assigned to Carolyn Palermo, an Appeals Officer in the New Orleans District Office on June 16, 1986. At the time she received the administrative file containing petitioners' income tax returns and other records, Mr. Sher's correspondence of November 7, 1985, was not included. Ms. Palermo did not receive the correspondence and attachments until June 19, 1986. Ms. Palermo and petitioners' counsel subsequently conferred by telephone, after which petitioners' counsel transmitted a copy of petitioners' amended tax return to Ms. Palermo. On August 27, 1986, Ms. Palermo and petitioners' counsel met and discussed the $550 discrepancy in the amount petitioners claimed to have received from A.G. Edwards & Sons, Inc.

In a letter dated September 2, 1986, petitioners' counsel concluded that, based on the two separate A.G. Edwards &

[4]Mr. Sher, by his affidavit, alleges that he first spoke with a Mr. Stevens who told him that the notice of deficiency was probably a mistake and told him to wait until Feb. 1, 1986, before writing another letter. Sher alleges that the second time he spoke with a Chris Pavich who simply advised him of his deadline for filing a petition to preserve his rights, but who also told him an IRS representative would contact him before that deadline.

[5]Petitioners resided in New Orleans, Louisiana, at the time the petition was filed.

Sons, Inc., account numbers for Mr. Sher that Ms. Palermo had provided,[6] the source of the discrepancy in reporting was income earned by a Defined Benefit Plan and Trust Plan in Mr. Sher's name. Upon learning this, respondent then resolved the issue in petitioners' favor.

OPINION

Generally, a taxpayer who has substantially prevailed in a civil tax proceeding may be awarded a judgment for reasonable litigation costs incurred in such proceeding. Sec. 7430(a). In order to be entitled to such an award, the taxpayer must be the "prevailing party." The taxpayer must:

(1) establish that the position of the United States in the civil proceeding was not substantially justified (sec. 7430(c)(2)(A)(i)[7]);

(2) substantially prevail in the litigation (sec. 7430(c)(2)(A)(ii)) and

(3) have a net worth which did not exceed $2,000,000 at the time the adjudication was initiated (sec. 7430(c)(2)(A)(iii)[8]).

A judgment for litigation costs will not be awarded under section 7430(a) unless the Court determines that the prevailing party has exhausted the administrative remedies available to such party within the IRS. Sec. 7430(b)(1). No award for reasonable litigation costs may be made with respect to any portion of the civil proceeding during which the prevailing party has unreasonably protracted such proceeding. Sec. 7430(b)(4).

In this case, respondent argues that petitioners are not the "prevailing party" within section 7430(a) because they have not established that the position of the United States was not substantially justified, and they have not shown that their net worth did not exceed $2 million at the time the proceeding was initiated. Respondent also contends that

---

[6]We note that apparently at all times respondent's records contained the two separate identification numbers for Mr. Sher's accounts with A.G. Edwards & Sons, Inc.

[7]Sec. 7430(c)(2)(A)(i) was amended by sec. 1551(d)(1) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752. The provision applies to proceedings commenced after Dec. 31, 1985. Prior law required the taxpayer to prove the Government's position "was unreasonable."

[8]Sec. 7430(c)(2)(A)(iii) was added by sec. 1551(d)(2) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752.

petitioners did not avail themselves of administrative procedures available to reconcile their dispute. Furthermore, respondent claims, even if petitioners satisfied all three prongs of the "prevailing party" test and exhausted their administrative remedies, according to our recent holding in *Minahan v. Commissioner*, 88 T.C. 492 (1987), the attorney's fees claimed are not "reasonable litigation costs" because Mr. Sher holds an equity interest in the law firm to which the fees are to be paid.

In 1986, Congress amended section 7430 to conform that provision more closely to the Equal Access to Justice Act. Sec. 1551, Pub. L. 99-514, 100 Stat. 2752 (Tax Reform Act of 1986); see S. Rept. 99-313, at 198 (1986), 1986-3 C.B. (Vol. 3) 198. Where the prior statute required the taxpayer to prove that the Government's position in the proceeding was "unreasonable," the amended statute requires the taxpayer to establish that the position of the United States was "not substantially justified." Sec. 7430(c)(2)(A)(i). There is no suggestion in the legislative history that the "substantially justified" standard was intended to be a departure from the "reasonableness" standard. In fact, the legislative history to the Equal Access to Justice Act indicates that the substantially justified test under that statute is essentially one of reasonableness. H. Rept. 96-1418 (1980), reprinted in 5 U.S. Code Cong. & Admin. News 4984, 4989 (1980); see, e.g., *S&G Riggers & Erectors, Inc. v. OSHRC*, 672 F.2d 426, 430 (5th Cir. 1982).[9] We also recently looked to the substantially justified standard in determining whether respondent's conduct was "unreasonable" under prior section 7430. See *Rutana v. Commissioner*, 88 T.C. 1329 (1987).

Because the "substantially justified" standard is not a departure from the "reasonableness standard" we will also continue to look to the following legislative history to prior section 7430 for guidelines in evaluating respondent's position:

The committee intends that the determination by the Court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in this record. Other factors the committee

---

[9]But cf. *Spencer v. NLRB*, 712 F.2d 539, 558 (D.C. Cir. 1983), holding that under the Equal Access to Justice Act the test should be slightly more stringent than one of reasonableness because the language "reasonably justified" was rejected in favor of "substantially justified."

believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the Court finds relevant. [H. Rept. 97-404, at 12 (1981).]

In determining whether the Government's position was not substantially justified, petitioners urge us to take into account the Government's administrative actions that necessitated their filing a petition to this Court. Respondent, on the other hand, contends that only the actions after District Counsel became involved should be considered.

Prior to the enactment of the Tax Reform Act of 1986 (Pub. L. 99-514, 100 Stat. 2085), and the amendments to section 7430, this Court held that only respondent's actions after a petition is filed may be considered in determining whether respondent acted reasonably for purposes of section 7430. *Rutana v. Commissioner, supra; Wasie v. Commissioner*, 86 T.C. 962 (1986); *Baker v. Commissioner*, 83 T.C. 822, 827 (1984), revd. on other issues 787 F.2d 637, 641-642 (D.C. Cir. 1986).

The Court permitted a review of "the events that occur before a petition is filed [only] to determine whether respondent acted reasonably in pursuing the litigation in light of what he knew at the time the litigation commenced." *Rutana v. Commissioner, supra*, citing *Don Casey Co. v. Commissioner*, 87 T.C. 847, 862 (1986). The District of Columbia, 11th, and 10th Circuits agreed that the "position of the United States" which must be examined is the Government's in-court litigating position. *Ewing & Thomas, P.A. v. Heye*, 803 F.2d 613 (11th Cir. 1986); *Baker v. Commissioner*, 787 F.2d 637, 641-642 (D.C. Cir. 1986); *United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440 (10th Cir. 1985);[10] *Ashburn v. United States*, 740

---

[10]But see *Plowman v. United States*, 659 F. Supp. 34 (W.D. Okla. 1986), where the District Court for the Western District of Oklahoma interprets the "position of the United States" to include the conduct of the Government prior to the instigation of litigation. The District Court believes the 10th Circuit will ultimately adopt the same view in light of the 1985 amendment to the Equal Access to Justice which was passed 5 days after *Balanced Financial Management* was issued. The amendment provides that the position of the United States includes the action or failure to act by the *agency* upon which the civil action is based. 28 U.S.C. sec. 2412(d)(2)(D) (1982).

F.2d 843, 848 (11th Cir. 1984). The Fifth and First Circuits, however, interpreted section 7430 to allow an examination of both pre-litigation and litigation positions. *Powell v. Commissioner*, 791 F.2d 385, 391 (5th Cir. 1986); *Kaufman v. Egger*, 758 F.2d 1, 4 (1st Cir. 1985).

The Fifth Circuit, to which this case is appealable, stated that respondent's position that forces a taxpayer to file a suit is to be examined. *Powell v. Commissioner, supra*, (remanding case to Tax Court for a determination as to whether respondent's position that caused the taxpayer to file suit was reasonable).

In 1986, Congress addressed this issue specifically by adding section 7430(c)(4) which provides that the term "position of the United States" includes:

(A) the position taken by the United States in the civil proceeding, and

(B) *any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.*

[Sec. 1551, Pub. L. 99-514, 100 Stat. 2752. Emphasis added.]

In light of this amendment, the Fifth Circuit's holding in *Powell v. Commissioner, supra*, is not applicable to actions commenced after December 31, 1985. Under the statute, our application of the substantially justified standard to administrative actions or inactions prior to the institution of a proceeding is limited to the period beginning with the point at which District Counsel has become involved.[11]

Based on the record before us, petitioners have not established that the position of the United States was not substantially justified. We cannot consider any of respondent's pre-litigation actions or inactions since District Counsel first became involved in this case by answering the petition. In the answer, respondent denied allegations per-

---

[11]Compare the analogous provision of the Equal Access to Justice Act which provides that the position of the United States includes the action or failure to act by the *agency* upon which the civil action is based. 28 U.S.C. sec. 2412(d)(2)(D) (1982). It is clear from the legislative history of sec. 7430(c)(4) that Congress considered and rejected this broader inquiry into the Government's actions or inactions at the administrative level before litigation. The amendment proposed by the Senate provided that the substantially justified standard was applicable to prelitigation actions or inactions *of Government agents* as well as the litigation position of the Government. However, the Conference agreement, while generally following the Senate amendment, provides that attorney's fees may be awarded with respect to the administrative action or inaction *by the District Counsel of the IRS* (and all subsequent administrative action or inaction) upon which the proceeding is based. H. Rept. 99-841 (Conf.), Vol. II, at II-802 (1986). It is this language that is reflected in the statute. Sec. 7430(c)(4).

taining to the November 7, 1985, letter because there was no such letter in the IRS administrative file. The case was then assigned to an appeals officer, who, upon receiving the November 7 correspondence 3 days after she received the administrative file, contacted petitioners' counsel. The parties discussed the discrepancy in the amount petitioners claimed to have received from A.G. Edwards & Sons, Inc. Petitioners' counsel, upon learning from the appeals officer that two account numbers were provided by A.G. Edwards & Sons, Inc., determined that the second amount was paid to Mr. Sher's Defined Benefit Plan. Once the appeals officer received this information, respondent settled the issue in favor of petitioners.

Under these circumstances, we think respondent acted reasonably. Whether this matter could have been resolved administratively, before the statutory notice was issued, is irrelevant. What is relevant is that respondent settled the issue promptly upon receipt of information by petitioners' counsel that the additional $550 was attributable to Mr. Sher's Defined Benefit Plan.[12] Petitioners' motion is hereby denied.

*An appropriate order will be entered.*

---

[12]Petitioners make much of the fact that at all times respondent's documents indicated that Mr. Sher had two accounts with A.G. Edwards & Sons, Inc., and that it was not until this information was provided to petitioners' counsel that the problem was resolved. However in light of the fact that A.G. Edwards & Sons, Inc., reported to respondent that all of the income was paid to Mr. Sher and that Mr. Sher's letter was for an unexplained reason omitted from the administrative file at the time the answer was filed, we find respondent's position reasonable. Although petitioners had reported some of the income on their tax return, respondent did not know that petitioners related the amounts to those amounts provided by the company. Furthermore, the burden of proof was always on petitioners to show that respondent's determination was incorrect, and we assume Mr. Sher had access to both account numbers from the company.